UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHAYLA CLARK, on behalf of herself and all other employees similarly situated,<br>    Plaintiff, | )<br>)<br>)<br>) | |
| v. | ) | Civil Action No. 17-30186-MGM |
| BERKSHIRE MEDICAL CENTER, INC.,<br>    Defendant. | )<br>)<br>)<br>) | |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION
TO COMPEL DISCOVERY
(Dkt. No. 36)

I.     INTRODUCTION

Plaintiff Shayla Clark filed this action on behalf of herself and other similarly situated licensed practical nurses employed by Berkshire Medical Center ("BMC") asserting claims under the Fair Labor Standards Act, 29 U.S.C. §§ 207(a) and 216(b) (Count I); the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §§ 148 & 150 (Count II); Massachusetts common law - quantum meruit (Count III); and Massachusetts common law - unjust enrichment (Count IV). Ms. Clark filed her notice of consent to sue on December 29, 2017. On May 14, 2018, Nicole Millington filed a notice of consent to sue; on May 24, 2018, Shirley Victor also did so (collectively, "Plaintiffs") (Dkt. Nos. 5, 16, 20).[1] Before the court is Defendant's Motion to Compel Discovery ("BMC's Motion"), which seeks to compel supplemental answers to the interrogatories BMC served on each of the Plaintiffs and the production of engagement letters between Plaintiffs and their counsel (Dkt. No. 36). Plaintiffs oppose BMC's Motion (Dkt. No.

---

[1] Ms. Clark remains the only named plaintiff in this action. The court refers to Ms. Clark, Ms. Millington, and Ms. Victor collectively as "Plaintiffs" for convenience and because the Fair Labor Standards Act designates any individual who files a notice of consent to sue as a "party plaintiff." 29 U.S.C. § 216(b). BMC served discovery on each of the individuals who had filed a notice of consent to sue prior to the date of service of the interrogatories. Ms. Torello-Burns filed a notice of consent to sue on October 1, 2018. So far as the court is aware, BMC has not served discovery on Ms. Torello-Burns.

1

39). The court heard argument from the parties on December 11, 2018 and took BMC's Motion under advisement (Dkt. No. 45). For the reasons set forth below, the court GRANTS BMC's Motion in part and DENIES it in part.

II. DISCUSSION

A. Interrogatories

On July 7, 2018, BMC served a limited set of interrogatories on Plaintiffs posing the following two questions:

> Interrogatory 1: Please state the names, addresses, and present or last known places of employment of each person with personal knowledge concerning the facts alleged and the defenses asserted in the First Amended Complaint and the Answer to the First Amended Complaint and briefly summarize the substance of such knowledge.
>
> Interrogatory 2: Please provide an itemized computation of your damages, including a list of the dates on which you contend you missed all or part of a break or otherwise worked more than your scheduled shift and, for each such date, the amount of additional time you allege you worked and any overtime for which you contend you were not compensated.

(Dkt. Nos. 36-4, 36-5, 36-6).

1. Interrogatory 1

Ms. Clark's response to interrogatory 1 referred BMC to Ms. Clark's initial disclosures, in which she listed nine individuals including herself, Ms. Millington, and Ms. Victor. She stated that these nine individuals had "knowledge/information" regarding the terms and conditions of her employment, her job responsibilities, and/or hours worked (Dkt. No. 36-19). Following BMC's objection to the sufficiency of this response, Ms. Clark supplemented her answer to interrogatory 1 by stating collectively, as to these nine individuals (including herself), that she was unaware of their addresses and present employment but believed that their last place of employment was with BMC. As to the substantive knowledge of these individuals, she stated

(again collectively) that she believed these individuals had knowledge of "BMC's policies, practices and procedures with regard to meal breaks, timekeeping, recording of hours worked, and/or monitoring of hours worked," and of employees who worked through meal breaks without compensation (Dkt. No. 36-24). In her initial interrogatory responses, Ms. Millington separately listed eight individuals, provided their last known telephone numbers and identified the positions they held or had held at BMC. As had Ms. Clark, Ms. Millington collectively identified topics as to which she believed these eight individuals had knowledge or information (Dkt. No. 36-22). In a supplemental response, she answered, again collectively, that she believed these individuals had knowledge of BMC's policies, practices and procedures with regard to meal breaks, timekeeping, recording of hours worked, monitoring of hours worked, and of employees who worked through meal breaks without compensation (Dkt. No. 36-25). Ms. Victor did not answer BMC's interrogatories at all.

Having carefully reviewed BMC's entire submission in support of its motion, it does not appear that BMC informed Plaintiffs' counsel of specific claimed deficiencies in Plaintiffs' responses to interrogatory 1 prior to filing its motion to compel (Dkt. Nos. 36-2; 36-20). "The meet and confer requirement in Rule 37(a)(1) is not an empty formality and cannot be satisfied merely by including copies of correspondence that discuss the discovery at issue, particularly when the correspondence only shows the movant threatening a motion to compel if all the requested discovery is not produced." *A.J. Amer Agency, Inc. v. Astonish Results, LLC*, C.A. No. 12-351S, 2013 WL 9663951, at *2 (D.R.I. Feb. 25, 2013). *See, e.g.,* Docket No. 36-20. Emails that state a moving party's point of view instead of reflecting good faith efforts to reach an agreement do not satisfy the meet and confer requirement. *See id.* (citing *Aponte-Navedo v. Nalco Chem. Co.*, 268 F.R.D. 31, 41 (D.P.R. 2010)). Nonetheless, in view of the time spent in

court conferring about the parties' respective positions and discovery obligations, the court intends to rule on BMC's Motion so that the case can move forward. *Contrast TG Plastics Trading Co. v. Toray Plastics*, No. C.A. 09-336S, 2010 WL 936221, at *3 (D.R.I. Mar. 12, 2010) (ordering the parties to confer in good faith on the appropriate scope of discovery rather than ruling substantively on the pending motion to compel); *see also A.J. Amer Agency, Inc.*, 2013 WL 9663951, at *2 (same).

BMC's request to Plaintiffs to identify individuals with relevant knowledge and provide a brief summary of that knowledge is a standard interrogatory. Precisely what is required as a response to such an interrogatory is not clearly spelled out in the Federal Rules of Civil Procedure or in case law. The court agrees with BMC's contention that it is not proper to respond to such an interrogatory on a collective basis, nor is it appropriate to refer the propounding party to the initial disclosures, which are not signed under oath by a party, and which only require that a party identify individuals "likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). *Cf. Mulero-Abreu v. Puerto Rico Police Dept.*, 675 F.3d 88, 93 (1st Cir. 2012) (stating that a party should not answer an interrogatory by directing the propounding party to review the contents of other discovery materials). At a minimum, a party responding to an "individuals with knowledge" interrogatory must separately list each individual whom the responding party knows or believes possesses relevant knowledge (whether or not the disclosing party expects to use the information to support a claim or defense), identify the specific topic or topics as to which the responding party believes each identified individual has knowledge, and summarize that knowledge. To varying degrees, each of the Plaintiffs failed to satisfy these obligations.

At the motion hearing, in response to the court's inquiry, BMC's counsel identified substantive subjects that BMC believed should be addressed in any supplemental answers to interrogatory 1 served by the responding parties. Those include identifying the BMC department, unit, and geographic location in which each identified individual worked; the specific BMC policies, procedures, or practices about which each identified individual was knowledgeable; which BMC employees any identified individual allegedly observed who worked through meal times without being compensated; and about what period during the last six years each identified individual possessed the information identified in the response. While not necessarily required to be addressed in response to interrogatory 1 in the form in which it was propounded, these are topics relevant to conditional certification and to Plaintiffs' claims.[2]

BMC is entitled to further supplementation of Plaintiffs' answers to interrogatory 1. The court grants so much of BMC's Motion as seeks to compel supplementation of Plaintiffs' answers to interrogatory 1 as follows. Ms. Clark and Ms. Millington are hereby ordered to supplement their responses, and Ms. Victor is required to serve her response, to BMC's interrogatory 1 by identifying separately each person with personal knowledge concerning the facts alleged in the First Amended Complaint and (to the extent applicable) facts alleged in the Answer to the First Amended Complaint and briefly summarizing the substance of such knowledge. The identification of such persons shall include identifying the BMC department, unit, and geographic location in which each identified individual worked, if known. The summary of knowledge shall, if applicable, identify the specific BMC policies, procedures, or practices about which each such identified individual has knowledge, and which BMC

---

[2] The parties agreed to phased discovery, with the first phase being limited to evidence relevant to conditional certification and the individual claims of Plaintiffs (Dkt. No. 36-2 at 3).

employees any identified individual allegedly observed who worked through meal times without being compensated. Finally, each answer or supplemental answer must state, to the extent known, the time period during which each individual with knowledge possessed the information summarized in the response.

   2. Interrogatory 2

Interrogatory 2 requested that each Plaintiff compute her damages. Plaintiffs were required to do so in their initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26(a)(1)(B) exempts certain classes of cases from the initial disclosure requirements. Fair Labor Standards Act and state law claims are not exempted from the initial disclosure requirements. Thus, Plaintiffs are required to compute their alleged losses in this case. It may be true that "'[a] computation of damages may not need to be detailed early in the case before all relevant documents or evidence has been obtained by the plaintiff.'" *McSwiggin v. Omni Limousine*, Case No. 2:14-cv-02172-JCM-NJK, 2016 WL 1030053, at *3 (D. Nev. Mar. 10, 2016) (quoting *Cardoza v. Bloomin' Brands, Inc.*, No. 2:13-cv-01820-JAD-NJK, 2015 WL 3875916, at *2 (D. Nev. June 22, 2015)). Here, however, it is beyond dispute that each of the Plaintiffs has the evidence necessary to compute her damages with a substantial degree of specificity. BMC maintained detailed compensation records for its employees and produced copies of the Plaintiffs' compensation records in mid-August 2018 (Dkt. No. 36-2 at 6). If Plaintiffs wish to maintain their suit, they have no excuse for avoiding this basic discovery obligation. *See generally AVX Corp. v. Cabot Corp.*, 251 F.R.D. 70, 80 (D. Mass. 2008) (barring a party which failed timely to compute damages in violation of its obligations under Fed. R. Civ P. 26(a)(1)(A)(iii) from presenting evidence on damages). That Plaintiffs may not be able to precisely compute their claimed damages does not excuse them from their obligation to compute

6

their losses as precisely as possible and to supplement that computation in the event that they obtain new information relevant to the calculation of their alleged losses. *See McSwiggan*, 2016 WL 1030053 at *4 (the plaintiff has an ongoing obligation to update and refine the computation of damages during discovery when and if additional information becomes available). To the extent Plaintiffs' alleged losses are based on estimates of uncompensated time, they are required to identify these estimates and the justification for these estimates, including whether the estimates are based on any records they maintained and the form in which they maintained such records. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii).

Plaintiffs have not pointed to any persuasive support for their contention that their responses to interrogatory 2 are adequate or consistent with their discovery obligations at this time. First, that it may be possible for a plaintiff to meet his or her burden of proof on damages in a wage and hour case based on an estimate of uncompensated time does not excuse such a plaintiff from computing his or her claimed losses. The cases cited by Plaintiff do not hold otherwise. Second, even if BMC could do so (and it cannot), it is not BMC's obligation to compute Plaintiffs' alleged losses (Dkt. No. 36-2 at 9). *See* Fed. R. Civ. P. 26(a)(1)(A)(iii); *see also Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011) (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294-95 (2d Cir. 2006)). Third, the idea, advanced at the motion hearing, that Plaintiffs were entitled to avoid their discovery obligations because the answers they planned to serve likely would not foreclose a motion to compel is no justification at all (Dkt. No. 36-23).

So much of BMC's motion as seeks to compel Plaintiffs to compute their alleged losses with as much specificity as possible based on the compensation records produced by BMC and any other relevant evidence, including any personal estimates of uncompensated time, is granted.

3. Engagement Letters

Finally, BMC seeks to compel production of Plaintiffs' engagement letters with their counsel. BMC contends that Plaintiffs' engagement letters are not privileged and are relevant because the letters may contain information bearing on Ms. Clark's suitability as a representative of a class or collective group of BMC employees. Plaintiffs oppose this aspect of BMC's Motion on the grounds that the engagement letters are not relevant at this stage and are protected by attorney-client privilege. Plaintiffs have the better of the arguments.

There is a substantial body of case law addressing the discoverability of engagement letters at the class certification stage. "[T]he majority rule is that pre-certification discovery of fee and retainer agreements is rarely appropriate." *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 322 (N.D. Ohio 2009) (citing *Mitchell-Tracey v. United Gen. Title Ins. Co.*, No. Civ. AMD-05-1428, 2006 WL 149105, at *1-3 (D. Md. Jan. 9, 2006) (citing, *inter alia*, Federal Judicial Center's Manual for Complex Litigation § 21.141 (4th ed. 2004))); *see also, e.g., Worth v. CVS Pharmacy, Inc.*, 16-CV-0498 (FB) (SMG), 16-CV-2624 (FB) (SMG), 2018 WL 1611374, at *2 (E.D.N.Y. Apr. 3, 2018) ("[A] number of courts have addressed the question of whether fee arrangements between named plaintiffs and class counsel are discoverable, and . . . most have denied motions to compel documents relating to those arrangements"; citing cases); *In re Riddell Concussion Reduction Litig.*, Civil No. 13-7585 (JBS/JS), 2016 WL 7325512, at *2 (D.N.J. Jan. 19, 2016) ("The majority of federal courts considering this issue have ruled that fee agreements are not discoverable before certification."). "Precertification inquiries into the named parties' finances or the financial arrangements between the class representatives and their counsel are rarely appropriate, except to obtain information necessary to determine whether the parties and

their counsel have the resources to represent the class adequately." Federal Judicial Center's Manual for Complex Litigation § 21.141.

In this case, BMC is not seeking copies of Plaintiffs' fee agreements to determine whether the parties and counsel have the financial resources necessary to represent the class. Rather, noting that Ms. Clark's attorney represents her in a separate proceeding against BMC, the defendant argues that it is entitled to see the fee agreement because the contents may bear on Ms. Clark's suitability as a class representative, whether she is similarly situated to other potential FLSA class members, and her motivation in asserting wage and hour claims against BMC (Dkt. No. 36-1 at 16). These contentions are unpersuasive. First, BMC has not pointed to any authority to support its contention that a named plaintiff in a wage and hour class who also has a separate suit pending against her former employer on different grounds is therefore unsuitable as a class representative. The court is aware of none. Thus, BMC has not made a sufficient *prima facie* showing of unsuitability or of a potential conflict between Ms. Clark and other class members. *See In re Riddell Concussion Reduction Litig.*, 2016 WL 7325512, at *3 (denying motion to compel production of fee agreements because defendants' assertions of potential harm were speculative and insufficient to demonstrate the relevance of the fee agreements). Second, BMC's conclusory assertion that the engagement letter between Ms. Clark and her counsel is likely to be illuminating on these points is unpersuasive, and, in any event, BMC may question Ms. Clark at her deposition about her motivation for bringing this action and any conditions she has imposed on her willingness to serve as a class representative. *See In re Front Loading Washing Mach. Class Action Litig.*, Civil Action No 08-51 (FSH)(MAS), 2010 WL 3025141, at * 4 (D.N.J. July 29, 2010) (denying defendant's motion to compel the production of fee agreements on the basis, in part, that the defendants could obtain the

9

information by alternative means, such as plaintiffs' depositions). Third, it appears that BMC is seeking copies of engagement letters between each of the Plaintiffs and counsel, but BMC's contentions for seeking access to these letters only apply to Ms. Clark.

"Adopting [BMC's] position would cause an unnecessary intrusion into the affairs of class counsel and the class representatives. The Court will not permit [BMC] to 'fish' around in [P]laintiffs' fee agreements unless and until there is a good reason to believe the agreements contain relevant information. That is not the case here." *In re Riddell Concussion Reduction Litig.*, 2016 WL 7325512, at *3. *See Stanich*, 259 F.R.D. at 322; *Mitchell-Tracey*, 2006 WL 149105, at *3.[3] For these reasons, this aspect of BMC's Motion is denied.

### III. CONCLUSION

For the foregoing reasons, BMC's Motion is GRANTED in part and DENIED in part on the terms set forth in this Memorandum and Order. Plaintiffs will supplement their responses to BMC's interrogatories 1 and 2 within 21 days from the date of this Order. Because the court has granted BMC's motion in part and denied it in part and deems that an award of fees and costs to either side is not merited where counsel have observed the letter, but not the spirit of Fed. R. Civ. P. 37(a), so much of BMC's Motion as seeks sanctions pursuant to Fed. R. Civ. P. 37 is DENIED. *See* Fed. R. Civ. P. 37(a)(5)(A)(i) and (C).

It is so ordered.  /s Katherine A. Robertson
KATHERINE A. ROBERTSON
U.S. MAGISTRATE JUDGE

Dated: January 2, 2019

---

[3] Because the court denies BMC's motion to compel production of the fee agreements on the grounds that BMC has not shown that the documents are relevant at this stage, the court does not reach the question of privilege at this time. *See Mitchell-Tracey*, 2006 WL 149105, at *3 n.3.